**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

STEPHANIE COHEN SHALIT,
individually and on behalf of all others
similarly situated,

                     Plaintiff,

     v.

DEMERT BRANDS, LLC,

                 Defendant.

Case No.:

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiff Stephanie Cohen Shalit ("Plaintiff") brings this Class Action Complaint against DeMert Brands, LLC ("DeMert," "NYM," or "Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

**NATURE OF THE ACTION**

1.    This is a civil class action brought by Plaintiff on behalf of all consumers who purchased Defendant's Not Your Mother's® brand of dry shampoo (the "NYM Dry Shampoos" or the "Products"[1]) for normal, household use. The Products are defective because they contain

---

[1] This action concerns multiple varieties of Not Your Mother's dry shampoo products, including: Beach Babe Texturizing Dry Shampoo Toasted Coconut, Clean Freak Refreshing Dry Shampoo, Original or Unscented, Triple Threat Brunette Dry Shampoo Hint of Brunette Tinted Powder, Plump for Joy Body Building Dry Shampoo Orange Mango, or Blonde Moment Dry Shampoo Hint of Blonde Tinted Powder. As alleged herein, Defendant's Products contain the harmful carcinogen benzene. Accordingly, discovery will reveal the exhaustive list of substantially similar Products that are included in this action.

dangerously high levels of the chemical benzene, a known carcinogen that offers no therapeutic shampoo benefit.

2.      Over the course of several years, Defendant gained the trust of consumers with its NYM product line, which Defendant bills as a "superior quality hair care line for tweens, teens, and young adults."[2] Thus, consumers reasonably believe that Defendant's products, including the defective Products at issue, are made with quality materials, and can be used safely, as intended.

3.      Defendant formulates, designs, manufactures, markets, advertises, distributes, and sells the Products to consumers throughout the United States, including in the State of Illinois.

4.      Defendant distributes and sells the Products through various authorized retailers in store and online.

5.      Defendant represents that the Products are safe for their intended use. In reality, the Products contain significant concentrations of the toxic chemical benzene.

6.      Benzene is a carcinogen known to cause cancer in humans. Long-term exposure additionally causes harmful effects on the bone marrow; a decrease in red blood cells leading to anemia; and excessive bleeding that can affect the immune system, leading to an increased chance of infection. According to FDA guidance, **there is no safe level of benzene**, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity."[3]

7.      According to the National Institute for Occupational Safety and Health, humans can become exposed to benzene through "inhalation, **skin absorption**, ingestion, **skin** and/or eye

---

[2] https://www.demertbrands.com/about/ (last visited Dec. 30, 2022).
[3]     FDA, Q3C – 2017 Tables and List Guidance for Industry. Available at https://www.fda.gov/media/71737/download.

contact."[4]  Skin absorption is particularly concerning for the Products-- which are designed to be applied to the scalp—as there have been multiple FDA studies showing that structurally similar chemicals in sunscreen products are found in the blood at high levels after application to exposed skin.[5]

8.      FDA guidance provides that "if [benzene's] use is unavoidable in order to produce a drug product with a significant therapeutic advance, then [its] levels should be restricted" to 2 parts per million ("ppm").  *Id.*

9.      The use of benzene in the Products is demonstrably avoidable.  Feasible alternative formulations, designs, and materials were available to Defendant at the time it formulated, designed, and manufactured the Products.  Critically, such alternative formulations and designs were and are used by other dry shampoo manufacturers to produce and sell non-defective dry shampoos.

10.     In any event, the Products' benzene concentration far exceeds even this 2 ppm ceiling.  The NYM Dry Shampoos tested had benzene concentrations ranging from 4.46ppm to **158 ppm,** nearly **80 times** the FDA concentration limit of 2 ppm.

11.     The Products' benzene contamination was not disclosed to the consumer on the product label, the ingredients list, or otherwise.

12.     Plaintiff seeks damages and equitable remedies for herself, and for the proposed Class.

---

[4]     National Institute for Occupational Safety and Health (NIOSH), Benzene, https://www.cdc.gov/niosh/npg/npgd0049.html (Last Accessed November 3, 2022)

[5] https://www.fda.gov/news-events/fda-voices/shedding-more-light-sunscreen-absorption (Last Accessed November 3, 2022)

## PARTIES

### A.  Plaintiff

13.    Plaintiff Stephanie Cohen Shalit is a resident and citizen of Chicago, Illinois who purchased and used the Products in Illinois within the relevant time period.

### B.  Defendant

14.    Defendant DeMert Brands, LLC is a Florida limited liability company headquartered at 15402 N. Nebraska Ave. #102, Lutz, Florida 33549.  DeMert launched the Not Your Mother's® brand in 2010, and at all times relevant to this lawsuit, Defendant has owned, advertised, marketed, manufactured, distributed, and sold the Not Your Mother's® brand throughout the United States and the State of Illinois. The Products, including the adulterated Products purchased by Plaintiff and members of the proposed Classes, are available at retail stores throughout Illinois and the United States.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more proposed Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states.

16.    This Court has personal jurisdiction over Defendant because it has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, because Defendant placed the Products into the stream of commerce directed at

4

this District, and because Defendant purposely availed itself of the laws and markets of the United States and the State of Illinois.

17.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District. Venue is also proper because Plaintiff resides in this District.

## FACTUAL ALLEGATIONS

### A.  DeMert's History and the Not Your Mother's Brand

18.     According to Defendant, DeMert Brands is "considered a legacy brand by the professional beauty industry" with over 50 years of history in the industry.[6]  On its website, DeMert declares that "the quality of our goods is truly our number one priority.  We want all of our customers to feel like they are getting the highest quality beaty care products . . . ."[7]

19.     DeMert owns 12 product lines with over 125 products which are sold internationally, including in 25,000 stores in the United States.[8]

20.     DeMert's products, including the NYM Dry Shampoos, are manufactured, distributed, and sold throughout the United States, including the State of New York.

21.     DeMert markets and sells dry shampoo as part of its Not Your Mother's product line. DeMert developed the Not Your Mother's brand starting in 2008 and has sold NYM Dry Shampoo products for the past 12 years.[9]

---

[6] *Available at* https://www.demertbrands.com/about/ (last visited Dec. 30, 2022).

[7] *Id.*

[8] *Id.*

[9] *Id*.

22.     DeMert's website emphasizes that "Not Your Mother's Haircare reimagines your haircare products building in benefits you didn't know were possible.  Not Your Mother's transform[s] salon treatments and the latest haircare trends into at-home realities.  **We source clean, quality ingredients** that don't quit and are cruelty-free."[10]

### B.  The Products

23.     Dry shampoo is a product designed to absorb the dirt, oil, and grease of the scalp without washing it.[11]

24.     Dry shampoos are typically administered from an aerosol can and made with a base of alcohol or starch.  When applied to the hair, the dry shampoo soaks up the oil and grease, making it look cleaner.

25.     The U.S. Food and Drug Administration ("FDA") classifies and regulates shampoos, including dry shampoos like the Products, as cosmetics.

26.     Due to the substantial harm to humans caused by exposure to chemicals such as benzene, companies have been founded with the specific goal of preventing defective products, containing said harmful chemicals, from reaching consumers. Valisure is a company with a core mission "to independently check the chemical composition of medications and healthcare products before they reach consumers."[12]  In order to do this, Valisure operates an analytical laboratory registered with the FDA and accredited by the International Organization for Standardization.

27.     Valisure has tested for specific chemical qualities in numerous types of products, such as N-Nitrosodimethylamine ("NDMA") in ranitidine, NDMA in metformin, benzene in hand

---

[10] *Available at* https://www.demertbrands.com/not-your-mothers-haircare/ (Last Accessed Dec. 30, 2022)

[11] https://www.webmd.com/beauty/what-is-dry-shampoo (Last Accessed Dec. 30, 2022)

[12]     Valisure.     Valisure Detects Benzene in Body Spray Products (November 4, 2021) (https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-body-spray-products-3/)

sanitizers, benzene in aerosol deodorants and antiperspirants, and benzene in sun care products. Each time, Valisure's detection of benzene and other carcinogens has been independently confirmed by industry and led to recalls by manufacturers over the subject products.

28.     On October 31, 2022, Valisure petitioned the FDA to address the dangerous levels of benzene in the Products and other dry shampoos based upon rigorous testing the organization had conducted for a number of dry shampoo products.[13]  Valisure included the extensive results of these tests with its petition to the FDA.[14]

29.     In testing, Valisure found average concentrations of benzene above the FDA concentration limit of 2 ppm in **14 lots** of NYM Dry Shampoos.  Valisure's test results have already been confirmed by recalls of several dry shampoo products manufactured by Procter & Gamble and Unilever which were found to contain benzene.  In contrast, Defendant DeMert has to date refused to voluntarily recall its Products adulterated with the dangerous carcinogen benzene.

30.     In particular, Valisure found benzene concentrations between two and **eighty times** higher than the FDA concentration limit.

| Brand | UPC | Lot | Description | First Spray Benzene Concentration |
|-------|-----|-----|-------------|-----------------------------------|
| Not Your Mother's | 688047130500 | 21090 | Beach Babe Texturizing Shampoo – Toasted Coconut – 7 oz | 158 |

---

[13]     https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf (last visited Dec. 30, 2022).

[14]     *Id.*

| Brand | UPC | Lot | Description | First Spray Benzene Concentration |
|---|---|---|---|---|
| Not Your Mother's | 688047130098 | 21145 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz | 143 |
| Not Your Mother's | 688047130296 | 21070 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz | 69.6 |
| Not Your Mother's | 688047130975 | 20356 | Triple Threat Brunette Dry Shampoo - Hint of Brunette Tinted Powder - 7 oz | 27.6 |
| Not Your Mother's | 688047130296 | 21188 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz | 9.41 |
| Not Your Mother's | 688047130517 | 21141 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz | 132 |
| Not Your Mother's | 688047130500 | 21124 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz | 85.4 |

| Brand | UPC | Lot | Description | First Spray Benzene Concentration |
|-------|-----|-----|-------------|-----------------------------------|
| Not Your Mother's | 688047130500 | 21179 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz | 73.1 |
| Not Your Mother's | 688047130517 | 21181 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz | 55.3 |
| Not Your Mother's | 688047130098 | 20280 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz | 51.2 |
| Not Your Mother's | 688047130500 | 21063 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz | 40.1 |
| Not Your Mother's | 688047130296 | 21009 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz | 39.5 |
| Not Your Mother's | 688047130951 | 20353 | Blonde Moment Dry Shampoo - Hint of Blonde Tinted Powder - 7 oz | 22.9 |

| Brand | UPC | Lot | Description | First Spray Benzene Concentration |
|-------|-----|-----|-------------|-----------------------------------|
| Not Your Mother's | 688047132290 | 21194 | Clean Freak Refreshing Dry Shampoo - Original - 1.6 oz | 4.46 |

### C.  Danger Posed by the Products

31.     The carcinogenic properties of benzene are well documented, as noted be the Centers for Disease Control and Prevention ("CDC").[15]

32.     The U.S. Department of Health and Human Services ("DHHS") has determined that benzene causes cancer in humans. Long-term exposure to high levels of benzene can cause leukemia, a cancer of the blood-forming organs.

33.     Additionally, long-term exposure to benzene causes harmful effects to bone marrow and can cause a decrease in red blood cells, leading to anemia.  It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.

34.     Due to these significant health risks, the World Health Organization and the International Agency for Research on Cancer classify benzene as a Group 1 compound that is "carcinogenic to humans."[16]

35.     In addition to the risk of developing cancer, "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[17]

---

[15] *See* CDC, Facts About Benzene (2018), https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

[16]   https://www.who.int/water_sanitation_health/dwq/chemicals/benzenesum.pdf (last visited Dec. 30, 2022).

[17]     Centers   for   Disease   Control   and   Prevention,   Facts   About   Benzene, https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

36.     According to the National Institute for Occupational Safety and Health, humans can become exposed to benzene through "inhalation, **skin absorption**, ingestion, **skin** and/or eye contact."[18]  The Products at issue here are applied to the scalp, i.e., the skin on the head.

37.     The FDA classifies Benzene as a Class 1 compound.[19]   According to FDA guidance: "Solvents in Class 1 should not be employed in the manufacture of drug substances, excipients, and drug products, because of their unacceptable toxicity or their deleterious environmental effect."[20]   The FDA concentration limit for benzene is 2 ppm, a fraction of the benzene concentration found in the Products.[21]

### D.  Defendant DeMert's Representations and Material Omissions

38.     Defendant makes a significant number of representations regarding the quality and safety of the Products on their website. DeMert describes the Not Your Mother's® line as "a superior quality hair care line for tweens, teens and young adults" and promises that "[a]t DeMert Brands the quality of our goods is truly our number one priority."[22] Although the Products were found to contain benzene concentration that far exceed the FDA limit, NYM does not list benzene among the active or inactive ingredients anywhere on its website,[23] and nothing on the Products' labels otherwise insinuate, state, or warn that the Products contain benzene:

---

[18]     National Institute for Occupational Safety and Health (NIOSH), Benzene, https://www.cdc.gov/niosh/npg/npgd0049.html.

[19]     https://www.fda.gov/media/71737/download (last visited Dec. 30, 2022).

[20]     *Id.*

[21]     *Id.*

[22]     https://www.demertbrands.com/about/ (last visited Dec. 30, 2022).

[23]     *See generally* https://notyourmothers.com/collections/shop-all/products/plump-for-joy-dry-shampoo (last visited Dec. 30, 2022); https://notyourmothers.com/collections/shop-all/products/triple-threat-brunette-dry-shampoo (last visited Dec. 30, 2022); https://notyourmothers.com/collections/shop-all/products/beach-babe-dry-shampoo (last visited Dec. 30, 2022); https://notyourmothers.com/collections/shop-all/products/clean-freak-unscented-dry-shampoo (last visited





24

Dec. 30, 2022); https://notyourmothers.com/collections/shop-all/products/original-dry-shampoo (last visited Dec. 30, 2022); https://notyourmothers.com/collections/shop-all/products/blonde-moment-dry-shampoo (last visited Nov. 2, 2022).

24    *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Beach-Babe-Refreshing-Dry-Shampoo-Spray-7-oz/130088018 (last visited Dec. 30, 2022).





25

---

25      *Available    at*    https://www.walmart.com/ip/Not-Your-Mother-s-Clean-Freak-Refreshing-Dry-Shampoo-Spray-Original-7-oz/16777427 (last visited Dec. 30, 2022).



26





27

---

27      *Available    at*    https://www.walmart.com/ip/Not-Your-Mother-s-Triple-Threat-Brunette-Color-Protection-Oil-Control-Dry-Shampoo-7-oz/816981822 (last visited Dec. 30, 2022).





28

---

28    *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Plump-for-Joy-Refreshing-Dry-Shampoo-Spray-7-oz/136604427 (last visited Dec. 30, 2022).



29

### E.  Defendant's Products are Adulterated and Illegal to Sell

39.    Defendant's NYM Dry Shampoo Products are adulterated cosmetics under 21 U.S.C. § 361(a) based upon the presence of benzene.

40.    The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a). Adulterated and misbranded products thus have no economic value and are legally worthless.

---

29    *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Blonde-Moment-Color-Protection-Dry-Shampoo-7-oz/984267162 (last visited Dec. 30, 2022).

41.     Similarly, in Illinois, any "advertisement of a food, drug, device or cosmetic shall be deemed to be false if it is false or misleading in any particular." 410 ILCS § 620/20.

42.     The introduction of adulterated or misbranded cosmetics into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

43.     As alleged herein, Defendant has violated the FDCA; 410 ILCS § 620/20; Illinois' Consumer Fraud and Deceptive Trade Practices Act ("ICFA"); and various state consumer protection statutes. Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its misrepresentations and omissions surrounding benzene contamination affecting the Products.

44.     If Defendant had disclosed to Plaintiff and putative Class Members that the Products contained or risked containing benzene and thus risked benzene exposure during use of the Products, Plaintiff and putative Class Members would not have purchased the Products or they would have paid less for the Products.

45.     As a seller of a cosmetic, Defendant had and has a duty to ensure that its Products did not and do not contain excessive (or any) level of benzene, including through regular testing, especially before injecting the Products into the stream of commerce for consumers to use on their hair and scalp. But based on Valisure's testing results set forth above, Defendant made no reasonable effort to test its Products for benzene, despite its claims that the Products' ingredients were tested for safety. Nor did it disclose to Plaintiff in any advertising or marketing that its dry shampoo contained benzene, let alone at levels that are many multiples of the emergency, interim limit set by the FDA. To the contrary, Defendant represented and warranted, expressly and impliedly, that the Products were of merchantable quality, complied with federal and state law, and did not contain carcinogens or other impurities such as benzene.

46. No reasonable consumer, including Plaintiff, would have purchased the Products had they known of the material omissions of material facts regarding the presence of benzene. Accordingly, Plaintiff and the proposed Class suffered injury in fact and lost money as a result of Defendant's misleading representations and omissions and did not receive the benefit-of-the-bargain.

47. Plaintiff and the Class Members' injuries are underscored by the fact that numerous other products offering the same dry shampoo benefit at comparable prices exist that are not contaminated with benzene.

48. Plaintiff and the Class may be harmed again because they want to purchase the Products in the future; however, without injunctive relief Plaintiff would not be able to know or trust that Defendant will truthfully and legally label the Products and would likely be misled again.

**PLAINTIFF STEPHANIE COHEN SHALIT'S FACTUAL ALLEGATIONS**

49. Plaintiff Stephanie Cohen Shalit purchased Not Your Mother's Clean Freak & Beach Babe numerous times during the fullest period allowed by law. Most recently, Plaintiff purchased the Clean Freak product in or around June 2022 at a Walgreens store in Chicago, Illinois.

50. Nowhere on the packaging did Defendant disclose that the Product contained benzene at the time of purchase.

51. When purchasing the Product, Plaintiff read and reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer that the Product was properly manufactured, free from defects, safe for its intended use, not adulterated or misbranded, and legal to sell. Plaintiff read and relied on these representations and warranties in deciding to purchase the Product manufactured by Defendant, and these representations and warranties were part of the basis of the bargain in that, had Plaintiff been aware of the existence

of benzene in the Product, she would not have purchased the Product or would have paid significantly less.

52.     As a result of Defendant's actions, Plaintiff has incurred damages, including economic damages.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes:

> **National Class:** During the fullest period allowed by law, all persons who purchased any of the Products in the United States for personal use and not for resale within the United States.

> **Illinois Subclass:** During the fullest period allowed by law, all persons who purchased the Products in the State of Illinois for personal use and not for resale.

> **Consumer Fraud Multi-State Subclass**: All persons who purchased one or more of Defendant's Products in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or Washington for personal or household use within any applicable limitations period.[30]

54.     Members of the classes described are referred to as "Class Members" or members of the "Class" or "Classes."

55.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute

---

[30] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Illinois (815 Ill. Comp. Stat. 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.901, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010, et seq.); New Jersey (N.J. Stat. § 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, et seq.).

and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

56.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

57.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

58.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a)   Whether the Products contained benzene at the time of purchase;

b)   Whether Defendant omitted or failed to disclose material information to Plaintiff and Class Members regarding the Products;

c)   Whether the Products are defectively designed, formulated, and/or manufactured;

d)   Whether Defendant knew or reasonably should have known about the harmful level of benzene in the Products prior to distributing and selling them to Plaintiff and Class Members;

e)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

f)  Whether Defendant's actions violate the consumer protection statutes invoked herein;

g)  Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members;

h)  Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

i)  Whether Plaintiff and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

j)  Whether Plaintiff and the Class Members are entitled to injunctive, declaratory, or other equitable relief.

59.   Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

60.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as alleged of herein. Further, the damages of each Class Member were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

61.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Class Members she seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action

22

litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

62.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF STATE CONSUMER FRAUD ACTS
**(On behalf of Plaintiff and the Consumer Fraud Multi-State Subclass)**

63.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

64.     Plaintiff brings this Count on behalf of herself and the Consumer Fraud Multi-State Subclass against Defendant.

65.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Subclass prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

66.     Plaintiff and the other Members of the Consumer Fraud Multi-State Subclass have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Subclass because Plaintiff and Members of the Consumer Fraud Multi-State Subclass have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

67.     Defendant engaged in unfair and/or deceptive conduct by making material misrepresentations and omissions regarding the presence of benzene in the Products, as discussed herein.

68.     Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Subclass would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

69.     Given Defendant's position in the hair care market as an industry leader, Plaintiff and reasonable consumers, trusted and relied on Defendant's representations and omissions regarding the presence of benzene in the Products.

70.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Consumer Fraud Multi-State Subclass have sustained damages in an amount to be proven at trial.

71.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE
PRACTICES ACT, 815 ILCS 505/1, et seq. ("ICFA")
(On behalf of Plaintiff and the Illinois Subclass)**

72.     Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though set forth fully herein.

73.     Plaintiff brings this cause of action on behalf of herself and the Illinois Subclass Members against Defendant.

74.     Plaintiff and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

75.     Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

76.     At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

77.     Plaintiff and the proposed Class are "consumers" who purchased the Products for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

78.     The ICFA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer of this State or the United States." 815 ILCS 505/10b(1).

79.     The FDCA prohibits the introduction into interstate commerce "of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

80.     As the Products are adulterated and misbranded, the FDCA specifically prohibits their introduction into interstate commerce, and thus, actions under the ICFA related to the Products being adulterated and misbranded are not barred by 815 ILCS 505/10b(1).

81.     The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

82.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

83.     Plaintiff and the other Illinois Subclass Members reasonably relied upon Defendant's representation that the Products were safe for personal use and, due to Defendant's omission of the presence of benzene in the Products, Plaintiffs read and relied on Defendant's labeling to conclude that the Products were not contaminated with any dangerous substance, including benzene.

84.     Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

85.     Defendant violated the ICFA by representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

86.     Defendant advertised the Products with the intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

87.     Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

88.     Prior to placing the Products into the stream of commerce and into the hands of consumers to use on their bodies, Defendant knew or should have known that the Products risked contained benzene, but Defendant not only failed to properly test and place the Products into the requisite quality review, but further misrepresented, omitted, and concealed this fact to consumers, including Plaintiff and Class members, by not including benzene or the risk of benzene contamination on the Products' labels or otherwise warning about its presence. Defendant engaged in misleading and deceptive advertising by misrepresenting that the Products were safe and also by omitting the material fact that the Products contain benzene. Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products were exposed to and would be impacted by its omissions and would reasonably believe that the Products were safe for personal use and did not contain any dangerous contaminants, including benzene. However, the Products are not safe and free of benzene, as they are contaminated with the dangerous carcinogen, benzene.

89.     Defendant intended that Plaintiff and each of the other Illinois Subclass Members would reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the true nature of the Products.

90.     Defendant's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois Subclass Members to be deceived about the true nature of the Products.

91.     Plaintiff and Class Members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Products.

92.     As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Subclass Members have suffered ascertainable losses of money caused by Defendant's misrepresentations and material omissions regarding the presence of benzene in the Products.

93.     Had they been aware of the true nature of the Products, Plaintiff and Class Members either would have paid less for the Products or would not have purchased them at all.

94.     Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Subclass Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under 815 ILCS 505/10a. Plaintiff and Class Members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

<u>**COUNT III**</u>

**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class and/or the Illinois Subclass and/or the Consumer Fraud Multi-State Subclass)**

95.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

96.     Plaintiff brings this Count on behalf of herself and the Nationwide Class and/or the Illinois Subclass and/or the Consumer Fraud Multi-State Subclass against Defendant.

97.     This claim is brought under the laws of the State of Illinois.

98.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling the Products while misrepresenting and omitting material facts.

99.     Defendant's unlawful conduct allowed Defendant to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of,

Plaintiff and Class members and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

100.     Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which was not as Defendant represented them to be.

101.     Defendant knowingly received and enjoyed the benefits conferred on it by Plaintiff and Class members.

102.     It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class members' overpayments.

103.     Plaintiff and Class members seek the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendant as follows:

A.  Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class and Subclasses, and designating Plaintiff's counsel as Class Counsel;

B.  Awarding Plaintiff and Class members compensatory damages, in an amount to be determined at trial;

C.  Awarding Plaintiff and Class members appropriate relief, including but not limited to actual damages;

D.  For restitution and disgorgement of profits;

E.  Awarding Plaintiff and Class members reasonable attorneys' fees and costs as allowable by law;

F.  Awarding pre-judgment and post-judgment interest;

G.  For punitive damages; and

H.  Granting any other relief as this Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: January 2, 2023                    Respectfully submitted,

*/s/ Kevin Laukaitis*
Kevin Laukaitis
**LAUKAITIS LAW FIRM LLC**
737 Bainbridge Street #155
Philadelphia, PA 19147
Email: klaukaitis@laukaitislaw.com

***Attorneys for Plaintiff and the Proposed Classes***